Our next case is in the matter of Burciaga. Mr. Weedoff. The issue before the court today is whether all of the wages that are owed to a debtor before the debtor files a bankruptcy case may be seized by the bankruptcy trustee and distributed to creditors or whether the debtor may exempt a portion of those wages that's protected by Illinois law. My client, Mr. Burciaga, lost his job and a week later, deprived of his income, filed a bankruptcy case. The trustee has asked for all of the wages that he was owed at the time of that bankruptcy filing, basically vacation pay that he had accumulated over some period of time. Section 522B of the Bankruptcy Code allows a debtor in Mr. Burciaga's position to exempt in bankruptcy all property that is exempt under state law. Now, if we look at Illinois law that cares on unpaid wages, it's very clear that it's exempt. The Illinois wage deduction law is one of only two ways that a creditor could obtain unpaid wages. And the wage deduction law limits the amount that that creditor can obtain to 15%. The only other method by which a creditor could obtain unpaid wages is the Illinois citation to discover assets. And that statute expressly includes the exemption, and it calls it an exemption, that's contained in the wage deduction law. So, under Illinois law, unpaid wages may not be collected by a creditor. Does that mean that those wages are— I thought Illinois law provided that 15% of wages could be—  So, your position is not that they're all exempt, but that 85% is exempt. Exactly correct. The question is, under 522B3 of the Bankruptcy Code, is that state of Illinois law sufficient to render the 85% of wages exempt for purposes of bankruptcy? And that question was addressed by this court in its Geis opinion. And if I'm mispronouncing Geis, I apologize. In any event— Mr. Geis probably isn't here, so we will never know. Yes, and we don't know if he'd prefer a Germanic pronunciation of his name. But the point that I want to make is that Geis dealt with the meaning of exempt under state law for purposes of Section 522B of the Bankruptcy Code. And what Geis held was that although there was a question in that case about whether protecting against some forms of collection would be sufficient to make a piece of property exempt under the Bankruptcy Code, the court held no. It must be all forms of collection. And so, in that respect, the court took a more conservative approach to what constitutes an exemption under state law. In Geis itself, we were dealing with a question of personal injury claims held by the debtor. And Wisconsin law at the time only said that those claims were immune from sequestration by a trustee, a receiver. The court held in Geis this mere restriction of sequestration is not enough to make the property exempt. Fine. It has to cover all forms of collection. But as I just discussed, all forms of collection are prohibited by Illinois law with respect to unpaid wages. The district court and the trustee have argued that the Geis rule should not apply. One of their arguments is that the Geis rule should be subject to an addendum. That it's not enough that an exemption under state law foreclose all forms of collection. It must also be the intention of the state legislature that that exemption apply in bankruptcy. The first point I want to make is that there is nothing in section 522B that requires any expression of intent from a state legislature that its exemption should apply in bankruptcy. The statute is very clear. If it's exempt under state law, it's exempt in bankruptcy as well. And that should be the end of the discussion. But the district court and the trustee have gone on to make a number of arguments why that should not be because they say the state has clearly indicated an intent not to have the wage deduction, wage exemption, excuse me, apply in bankruptcy and so this court ought not to recognize it. Let's go through those arguments. The first is that there is some kind of a limitation to bankruptcy because the full list of potential forms of collection is not set out in the Wage Deduction Act or the Citation to Discover Assets. Well, of course not. Illinois would only foreclose collection procedures that could otherwise be applicable. So, for example, in the Homestead Exemption, there is no express prohibition against using wage deduction. There's no express prohibition against distress to collect rent. Those things are not applicable to foreclosure and so they're not in the Homestead Exemption law. But not mentioning inapplicable forms of collection hardly means that the exemption ought not to apply in bankruptcy. The only way to execute on unpaid wages in Illinois is pursuant to the garnishment or the Citation to Discover Assets. That's exactly right, Your Honor. Those are the two exclusive methods? Exactly. That's been acknowledged both by the trustee and by the district court. The district court went through the analysis that we'd set out in our brief and agreed with it. So it's only if there's some exception to the 522B rule set out in Geis that would allow for any other option here. But there's no question that these are the only forms of collection available under Illinois law for unpaid wages and no question that they're foreclosed by applicable law. Okay, the second argument that's made here... Well, so far you've mentioned only Geis. I'd like you to discuss Wienco. Or maybe it's Wienco. He's not here either, which held that the Illinois Garnishment Statute does not set out an exemption from federal bankruptcy processing. Yes. And if that's the only way you're linking through to the wage statute, you have a big problem in Wienco. Your Honor, I think the problem with Wienco, I'll go along with that pronunciation, is that the Wienco decision was based on the idea that there was an available form of collection for wages, and that was the Citation to Discover Assets. And at the time Wienco was decided, that was correct. The Illinois Citation Statute at that time did not foreclose collection of unpaid wages. But actually, it was amended before the Wienco decision was issued, just not applicable to the FECS situation. Then I'm worried that what you're saying is that Wienco, or whatever it is, was just wrongly decided. No. You said the state law was amended before Wienco, and we didn't pick up on it. That may be fine. It may be that it's a bad decision, but normally if we've got a bad decision, what you need to do is ask us to modify it, overrule it, tear it into little shreds. No, it was correctly decided for the law that was applicable at the time the issue arose. We decide exemption law based on the time that the bankruptcy court case is filed. The bankruptcy case in Wienco was filed before Illinois had changed its citation law. And so the court correctly applied the then applicable Citation to Discover Assets law and came to the conclusion that it could allow collection of unpaid wages. There was a discrepancy between the citation statute and the garnishment statute at the time? There would have been, yes, at the time Wienco was decided. That's been corrected. And so, again, going back to Geist, you apply Geist, and because not all forms of collection were prohibited at that time, there could be collection by the trustee of these unpaid unemployed. So as of filing, there was still the discrepancy in Illinois law, but not as of the time of the decision. That's right. Okay, the third of the reasons. Of course, I've noticed that the trustee does not rely on Wienco. Properly so. I will be asking them why. Maybe it's for your reason. Possibly. The third rationale that's been offered is that there is nothing in the exemption, the wage exemption under Illinois law that specifically mentions bankruptcy, as opposed to other exemptions in Illinois, which have limits imposed on them for bankruptcy purposes. So, for example, if someone converts non-exempt assets, like cash that could be taken by a trustee and distributed to creditors, into something that's no longer available, that becomes exempt, like a retirement account, transferring that non-exempt into an exempt form is held by the Illinois legislature not to be justified if it takes place shortly before bankruptcy. And so bankruptcy is mentioned in that exemption. Well, it's not mentioned in the context of the wage exemption. Well, the reason for that, it seems plain to me, is that there's no need to do that. The debtor can't generally control when wages are paid and time a bankruptcy so that it's going to have the influence of increasing the amount of exempt wages. Well, the debtor can time a bankruptcy filing as against payments of bonuses, et cetera. Possibly. And thereby gain the system if we find for you. It's not a general problem the way this problem that was addressed in the context of changing cash to a retirement account. Well, I'm not so sure about that. This case is very significant because many states have garnishment laws like this one that limit to some small fraction of unpaid wages the amount that can be executed on. And whether it's 75% the way it is in Indiana or 85% the way it is in Illinois or whether it has some dollar amount, those are determinations for the state legislature. And I think, Judge Sykes, that the point you make is a really important one because the belief that the court or the trustee might think there should be a limit here is not a reason for failing to enforce the rule as written. And this court in its Robinson case, Robinson v. Hagen, had to deal with a similar problem. Illinois exempts a Bible. Well, does that mean that a rare first edition Book of Mormon worth thousands of dollars can be exempted? And this court said yes because the legislature didn't impose any limitation on that exemption. And the same thing would be true here. One might say that it would have been wiser for the state legislature to put some kind of cap or time limit on wage exemptions, but it hasn't done it. Now, the final point that I wanted to make is the question of paid wages versus unpaid wages. The district court and the trustee have both argued that because our exemption only applies to wages held by an employer, that it ought not to be considered applicable in bankruptcy because it wouldn't apply after the wages are paid to the debtor. And this, again, is a mistake. First, because as I mentioned earlier, the exemption is determined as of the time the bankruptcy is filed. And as of the time the bankruptcy filed- I take it that's equally true of, say, an exemption for a domicile. Yes, exactly. If you sell it the day before the bankruptcy is filed and it's cash, no exemption. Exactly. The situation is that the status of the property at the time of the bankruptcy filing determines its exemptibility. And so that is wrong. Now, if it were relevant, we've cited authority for the proposition that under Illinois law, paid wages are also exempt, and that's in the citation to discover assets. But in the end, the trustee argues that this is a question of policy. The underlying policy of exemption law, the trustee argues, is violated by allowing the wage exemption to apply in bankruptcy. And frankly, that's just not true. First of all, the court shouldn't be looking at legislative intent in determining an exemption. It should go in the language of the statute that's the Robinson case. But beyond that, the need of a debtor to have a paycheck when a paycheck is due does not change whether the debtor is in bankruptcy or out of bankruptcy. And so we believe that the district court's decision should be reversed and the debtor's exemption for the unpaid wages to the extent of 85% should be allowed. Thank you. Thank you, Mr. Weedoff. Mr. Green. Good morning. May it please the Court. My name is Josh Green. I represent the Chapter 7 trustee, Alex Mollio. Mr. Green, let me begin with the district court's conclusion. As I read the district court's opinion, the court said that normal wages are exempt from collection in bankruptcy, but vacation pay is not, even though Illinois classifies it as wages. Are you defending that rationale? Not necessarily that rationale because vacation pay isn't. When you say not necessarily, I take it you mean no, because I couldn't see any defense of it in your brief. No, the parties agree that vacation pay is classified as wages. Yes. So the question in this case is whether wages are exempt, and it's not specific to vacation pay. That is correct. All right. The second question for you is I noticed you didn't cite or rely on Wienco. Is that because you agree with Mr. Weedoff's reading of it or reading of its limitations in light of amendments? No, Your Honor. Our argument was primarily based on plain language statutory interpretation. I would say that my opinion is that case is still good law, largely because that statute. Then why did you not cite it? Because it is by far your best authority if it's controlling. It actually deals with the problem of wage exemption for Illinois wages in bankruptcy. It doesn't specifically address the question of whether this statute is a bankruptcy exemption. It does deal with. It says that it isn't. Well, but the statute, pardon me, the case. It's been amended since then. Mr. Weedoff says that amendment matters. But you now say Wienco is still good law, and in that event, you just win instantly. So why are you not relying on it? I'm not sure I understand your rationale. Pardon me. I think the question of Wienco was a bit narrower, and that was whether the creditor could collect the wages after they're due. That was my understanding because the court cited the section of the citation statute, Section 1402C2, which says that essentially the debtor could be required or compelled by a court to turn over a portion of their income after it's received. And so what we're really talking about in this case is a little bit different issue. I understand the implications of the Wienco case on this one, but it's a little bit of a different question here. And we're asking whether Illinois intended for this to be a bankruptcy exemption. Who cares what anybody intended? Illinois, by the way, is a state. States don't have minds. They can't intend anything. But what is it in the federal bankruptcy statute, 522V, that makes anything turn on the contents of state legislators' heads? The opt-out provision. The opt-out provision gives the states the opportunity to substitute their judgment for the federal government. Yes, it does. What in the statute makes anything turn on the contents of legislators' heads as opposed to their acts? Normally we say legislation is a thing. It's passed by both houses. It's signed by the governor. The federal statute refers to state law. It doesn't refer to the contents of people's heads. It doesn't say if the Supreme Court of Illinois has interpreted the law to mean such and such, you still have to prove what the justice has intended. They wrote something. It has effects. So what in federal law makes anything turn on state legislators' intents? Again, respectfully, the opt-out provision. The states make their intent known through their legislation. Is there a reference? No. States don't make intent known through legislation. Legislation is an objective fact. It is conceivable, the Supreme Court tells us, that legislative history might bear on the meaning of the enacted thing. But the enacted thing is not evidence of intent. The enacted thing is the law. This is pretty fundamental. Unless there is some reference in the federal code to intent, and that's what I'm asking. Is there any? No, Your Honor. No. No. No. So going back to the prior reference to the Wienco case, I would note that that statute is pretty much the same as it was before. It specifically gives courts the power and the discretion to order a debtor to pay a portion of their income after it's received, and that statute has been left largely intact. Largely intact. There is a reference to wages under the wage deduction statute. It does make that paragraph a bit inconsistent. I'm not sure why. I think the only logical reading of that paragraph as a whole is that Illinois wanted to give courts some discretion to order perhaps a high-income debtor to pay a portion of their income after it's received. And I think that's where – and that's part of the problem here. Of course, we address some of the abuse questions. But going back to the plain language of this statute, this statute applies only to a deduction order. It doesn't reference any other form of process. And I understand the debtor's argument that this statute doesn't necessarily have to address other forms of process. And that's technically true in theory. But, for example, the term judgment, it's a generic term. It's not a form of process in and of itself. Yet the Wage Deduction Act doesn't address that at all. It doesn't say other form of process similar to some of the other statutes. Unpaid wages aren't subject to any other form of process under Illinois law? These are the only two forms of process, as I understand the state scheme. Unpaid wages are subject to no other form of process under Illinois law. That is correct. Sure. Why does it matter that the statute doesn't mention other inapplicable forms of process? Well, it's determining whether the state intended for this to apply. It doesn't matter what anybody intended. I think we've covered that. Sure. I understand. The statutory scheme only provides for two ways to execute on unpaid wages, and both ways are subject to this 15% limitation. There are no other ways to achieve process against unpaid wages. So why is it necessary to your argument that the statute mentioned inapplicable forms of process? Does that make any sense? It does. It makes perfect sense. Certainly, I will move on. Maybe explain why it makes sense that the statute must. If the court is of the opinion that the intent is not, I will move on and not beat that dead horse. I really want to address some of the potential for abuse issues. This asset, it's a bit different than money that's parked in a retirement account or a homestead, because the debtors can time their bankruptcy filings with this, particularly a self-employed debtor. A self-employed debtor can structure contracts. They can do this in a lot of them, and some of the cases that we've cited are good examples of that. The Jokio case where the debtor received almost $700,000 in severance pay. That would be exempt if this court agrees with the debtor. Why is this legally significant? Well, it's important because this is not an issue when it's clear that this is an exemption. That's what the Robbins report said. It doesn't matter how much it is, if it is indeed an exemption, but we're here to determine whether this is a bankruptcy exemption. Well, we don't determine whether it is by reference to some amorphous notions of good policy. We just look at what the state law says. Well, policy can, I think, can be taken into consideration if the statute is ambiguous. Why? Why? Right? It used to be that if a state made the full value of a home exempt, then it was exempt, and people moved to Florida and Texas just to take advantage of that. And that was challenged as bad policy, and courts said, no, it's written down. Congress then amended the bankruptcy code to set a cap on that exemption and to limit it if you move there within, say, two years of filing for bankruptcy. You're asking us now to, what, set a vacation pay is too much, that's subject to a cap, even without the benefit of any statutory language? Sure. I understand the court's point, and I only think it's relevant in determining whether this is an exemption in the first place. But certainly if the court does deem it to be an exemption, it is irrelevant.  I would just ask the court to affirm the lower court decisions denying the claim of exemption. Thank you. Thank you. Anything further, Mr. Weedoff? You have 28 seconds. I'll round it up to 30. The only point that I wanted to make, Your Honor, is that the question of the Wienco matter is addressed in our brief at footnote 10. I saw that. Thank you very much. Okay. Thank you very much. The case is taken under advisement.